1  NEHORAY & DRAKE, LLP
   MAC E. NEHORAY, ESQ. SBN# 147168
2  KAMBIZ DRAKE, ESQ. SBN# 271134
   23901 CALABASAS ROAD
3  SUITE 1030
   CALABASAS, CALIFORNIA 91302
4  TELEPHONE: (818)222-2227

5  ATTORNEY FOR PLAINTIFFS

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ROBERT M. FAUSEL,        )    Case:
   JUNE B. FAUSEL,          )
12                          )  1.  VIOLATIONS OF CA. CIV. CODE §2923.6
                            )  2.  VIOLATIONS OF CA. CIV. CODE §2923.55
13          Plaintiffs,     )  3.  VIOLATIONS OF CA. CIV. CODE §2923.7
                            )  4.  NEGLIGENCE
14 VS.                      )  5.  NEGLIGENT MISREPRESENTATION
                            )  6.  BREACH OF COVENANT OF GOOD FAITH
15 QUALITY LOAN SERVICE     )      AND FAIR DEALING
   CORPORATION, BANK OF     )  7.  VALUATIONS OF REG X UNDER RESPA
16 AMERICA, N.A., SHELLPOINT)      AND REG Z UNDER TILA
   MORTGAGE SERVICING, AND  )  8.  VIOLATIONS OF CAL. BUSINESS AND
17 DOES 1 TO 50, INCLUSIVE. )      PROFESSIONS CODE §17200
                            )  9.  UNFAIR DEBT COLLECTION
18          Defendants.     )  10. DEMAND FOR ACCOUNTING
                            )
19 _____)      DEMAND FOR JURY TRIAL

20

21     Plaintiffs, ROBERT M. FAUSEL and JUNE B. FAUSEL (hereinafer

22 "Plaintiffs"), by their attorney, for causes of action against

23 Defendants, QUALITY LOAN SERVICE CORPORATION (hereinafter "Quality"),

24 SHELLPOINT MORTGAGE SERVICING (hereinafter "Shellpoint") and BANK OF

25 AMERICA, N.A. (hereinafer "B of A) and hereinafter collectively

26 referred to as ("Defendants"), alleges the following on information

27

28 COMPLAINT FOR DAMAGES              1

and belief:

# I.

## <u>PARTIES</u>

1. Plaintiffs are individuals and resident of the State of California, County of San Bernardino.

2. Plaintiffs own and resides in the subject real property, commonly known as 5054 Solitude Court, Rancho Cucamonga, CA 91737 (the "Subject Property").

3. Defendant Shellpoint is a business organization of unknown form doing business in the State of California, County of San Bernardino. Shellpoint services one(]-four (4) family residential mortgages including Plaintiffs residential mortgage loan. Shellpoint is an entity that holds certain obligations to Plaintiffs by virtue of its role in the events described in this Complaint, and by virtue of its role as a consumer lender and servicer of home loans, and as a purported participant to the servicing of the loan contract that was entered into, between a lender and Plaintiffs.

4. Upon information and belief, Defendant Quality is a business organization of unknown form doing business in the County of San Bernardino and in the State of California, and is listed as "Trustee" conducting the foreclosure sale on the recorded property documents for the Subject Property.

5. Defendant B of A is a corporation doing business in the State of California, County of San Bernardino and is the mortgage holder for the subject property.

6. Plaintiffs are ignorant of the true names and capacities of

COMPLAINT FOR DAMAGES           2

defendants sue herein as DOES 1 to 50, inclusive, and therefore, sue these Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to allege their true names and capacities when they have been ascertained.

7. Plaintiffs are informed and believe, and based thereon, allege that at all times mentioned in this complaint Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

8. Plaintiffs are informed and believe, and based thereon, allege that each of said Defendants are, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiffs damages were proximately caused by Defendants.

9. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

# II.
# JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from

COMPLAINT FOR DAMAGES                3

1    exercising subject-matter jurisdiction over said causes of action.

2        11. This Court has subject-matter jurisdiction over the causes

3    of action alleged in this Complaint pursuant to California Code of

4    Civil Procedure (CCP) §392 and §395 because the dispute arises over

5    real property, the Subject Property, that is located in the County of

6    San Bernardino, and because Plaintiffs' injuries and damages occurred

7    in this jurisdictional area.

8        12. This Court has personal jurisdiction over the parties,

9    pursuant to CCP §410.10. Plaintiffs are, at all times relevant herein,

10   residents of the County of San Bernardino, State of California.

11   Defendants have subjected themselves to this Court's jurisdiction

12   because of their contact with this County by virtue of encumbering and

13   claiming an interest to the real property, the Subject Property,

14   located in this County, and because each Defendant resides in, is

15   incorporated in, has its main place of business in, and/or conducts

16   business in the State of California, and a substantial portion of the

17   acts, omissions, events, and transactions constituting the causes of

18   action alleged herein occurred within the County of San Bernardino,

19   State of California.

20       13. This Court is the appropriate venue for this action under CCP

21   §395 & §395.5 because the actions that give rise to the causes of

22   action alleged in this Complaint occurred in this County, and the

23   Subject Property is located in this County. Plaintiffs hereby

24   designates the County of Los Angeles, State of California, as the

25   place of proper venue .

26

27

28   COMPLAINT FOR DAMAGES                    4

# III.
## DEMAND FOR JURY TRIAL

14. Plaintiffs hereby respectfully request a trial by jury on all appropriate issues raised in this Complaint.

# IV.
## CALIFORNIA HOMEOWNER'S BILL OF RIGHTS

15. In response to mortgage servicer improprieties and the growing number of foreclosures, 49 state attorneys general served suit against the country's five major mortgage servicers. As a consequence, these mortgage servicers agreed to enter into consent judgments known as the National Mortgage Settlement ("NMS"). The NMS imposed new servicing standards on these servicers. The California Legislature passed the Homeowner's Bill of Rights ("HBOR") to give borrowers a private right of action to enforce these protections in court and to apply these requirements to all servicers, not just the five NMS signatories.

16. HBOR is codified in Civil Code sections 2920.5, 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924, 2924.9, 2924.10, 2924.11, 2924.12, 2924.17, 2924.18 and 2924.19.

17. The purpose of HBOR is to ensure that, as part of the non-judicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, any available loss mitigation options offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Cal. Civ.

COMPLAINT FOR DAMAGES                    5

1   Code § 2923.4(a).

2       18. Provisions of HBOR, including Civ. Code §§2923.5, 2923.55,

3   2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.12, 2924.17 and

4   2924.18, apply only to mortgages or deeds of trust that are secured

5   by owner-occupied residential real property containing no more than

6   four (4) dwelling units. For these purposes, "owner-occupied" means

7   that the property is the principal residence of the borrower and is

8   security for a loan made for personal, family, or household purposes.

9   Cal. Civ. Code §2924.15.

10      19. As applied herein, "borrower" means any natural person who

11  is a mortgagor or trustor and who is potentially eligible for any

12  federal, state, or proprietary foreclosure prevention alternative

13  program offered by, or through his or her mortgage servicer. Cal. Civ.

14  Code § 2920.5(c)(1).

15      20. "Foreclosure prevention alternative" means a first lien loan

16  modification or other available loss mitigation option. Cal. Civ. Code

17  § 2920.S(b ).

# V.

# FACTUAL BACKGROUND

### Defendants' Marked-Up and Unnecessary Fees

### for Default-Related Services

22      21. Plaintiffs allege, upon information and belief, that in

23  Defendants' loan servicing operations, Defendants follow a strategy

24  to generate fraudulently concealed default-related fee income. Rather

25  than simply obtaining default-related services directly from

26  independent third-party venders, and charging borrowers for the actual

27

28  COMPLAINT FOR DAMAGES          6

cost of these services, Defendants assess borrowers' accounts for services that are unnecessary and they unlawfully add additional undisclosed profits on to the charges before they are assessed on borrowers' accounts.

22.   Upon information and belief, Defendants' scheme works as follows: Defendants order default-related services from their subsidiaries and affiliated companies, who, in tum, obtain the services from third-party vendors. The third-party vendors charge Defendants for their services.

Defendants, in tum, charge borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services. As a result, even though the mortgage market has collapsed, and more and more borrowers are following into delinquency, Defendants continue to earn substantial profits by assessing undisclosed, marked-up fees for default-related services on borrowers' accounts.

23.   The mortgage contract between a lender and a borrower consists of two (2) documents: the Promissory Note ("Note") and the Mortgage or Deed of Trust ("Security Instrument"). The mortgage contracts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract. These contracts contain form language regarding what occurs if borrowers default on their loans. The Security Instrument authorizes the loan servicers, in the event of default, to:

> pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

24. The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement. The Note provides that the note holder:

> will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

25. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it does not authorize the servicer to mark-up the actual cost of those services to make a profit.

26. As discussed above, by charging marked-up fees, Defendants violate their agreements with borrowers because, among other things, charges that exceed the actual cost of the services provided are neither reasonable nor appropriate to protect the Note holder's interest in the property and the rights under the Security Instrument.

27. Furthermore, the wrongful nature of the marked-up fees is demonstrated by the fact that Defendants do not disclose to borrowers that the fees assessed on their accounts are marked-up from the amount actually charged by the vendor.

28. Plaintiffs are informed and believe, and on that basis, allege that Defendants conceal these marked-up fees for default-related services on borrowers' accounts, including Plaintiffs, by identifying the charges only as "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" on borrowers' statements.

COMPLAINT FOR DAMAGES                    8

29.  Plaintiffs are informed and believe, and on that basis, allege that under the "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" categories on borrowers' statements, Defendants also assess unnecessary and unreasonable fees for property inspections. Although such inspections purportedly are conducted to guard against property loss, Defendants' practices are designed to ensure that these fees are charged to as many accounts as possible, even if the inspections are inappropriate, unnecessary, or unreasonable.

30.  Plaintiffs are informed and believe, and on that basis, allege that even if the property inspections were properly performed and actually reviewed by someone at the bank, Defendants' continuous assessment of fees for these inspections on borrowers' accounts is still improper and unreasonable because of the frequency with which they are performed. If the first inspection report shows that the property is occupied and in good condition, it is unnecessary and inappropriate for Defendants to automatically continue to order monthly inspections. Nothing in the reports justifies continued monitoring.

31.  Plaintiffs allege, upon information and belief, that the assessment of these marked-up fees can make it impossible for borrowers to become current on their loan. Charges for default-related services can add hundreds or thousands of dollars to borrowers' loans over time, driving them further into default.

32.  When borrowers, including Plaintiffs, get behind on their mortgage, and fees for these default- related services are added on

---

to the past-due principal and interest payments, Defendants' practices make it increasingly difficult for borrowers to ever bring their loan current. Even if borrowers pay the delinquent principal and interest payments, the marked-up fees for default-related services ensure that borrowers stay in default. After paying delinquent principal and interest, although the next payment comes in on time, often through automatic payment deductions from borrowers' bank accounts, part of the payment is applied to the fees first, so there is not enough to cover the entire monthly payment. This makes the payment late, creating a cascade of more fees and arrears, which keeps borrowers in delinquency. By the time borrowers are aware, Defendants are threatening to foreclose unless a huge payment is made, and the weight of these unnecessary fees drops borrowers into a financial abyss.

33. As a result of Defendants' practices, borrowers, including Plaintiffs, are forced to move deeper into default, and suffer damage to their credit scores. Defendants provide information about borrowers' payment history to credit reporting companies, including whether they have been late with a payment or missed any payments. By keeping borrowers in default with these practices, Defendants affect whether borrowers can get a loan in the future, and what borrowers' interest rate will be on such loans.

34. Additionally, as a result of Defendants' practices, borrowers, including Plaintiffs, are wrongfully driven into foreclosure.

# VI

## Origination of the Loan and Subject Property

35. At all times relevant herein, Plaintiffs owned the Subject Property. Plaintiffs ownership is documented in a number of written instruments that are on file with the County of San Bernardino's Recorder's Office, including a Grant Deed from January 12, 1987.

36. In or around January 3, 1987, Plaintiffs entered into a written loan agreement and obtained a first lien mortgage loan in the amount of $652,000.00 (the "Loan"). The written contract between the parties is reflected in a note, the terms of which bind Plaintiffs primary residence, the Subject Property, with a security interest, the corresponding 1987 Deed of Trust, recorded on January 12, 1987, in the San Bernardino County Recorder's Office. A copy of said Deed of Trust, is attached and incorporated by reference to this Complaint as Exhibit A.

37. The Subject Property contains no more than four (4) dwelling units and is owner-occupied. The Subject Property is Plaintiffs's principal residence and is security for the Loan, which was made for personal, family, or household purposes.

38. At all relevant times, Plaintiffs was and currently is a "borrower," as defined by Civil Code §2920.5(C).

39. At all relevant times, Shellpoint serviced the Loan in their capacities described by Civil Code §2920.5(a).

## Plaintiffs's Financial Hardship and Pursuit
## of Foreclosure Prevention Alternatives

40. Plaintiffs have performed dutifully under the Loan, as

COMPLAINT FOR DAMAGES                    11

required pursuant to the terms of the Loan until around 2016 when they suffered a serious financial problem. As a result, Plaintiffs income suffered a significant loss during this period of time. Plaintiffs were in a constant struggle to make their monthly mortgage payments, and had no choice but to use the money in their savings and investment accounts to try to stay current on the Loan.

41. In or around early 2013, in an effort to prevent foreclosure proceedings and defaulting on the Loan, Plaintiffs contacted Shellpoint to discuss possible loss mitigation options to keep their home and were advised to apply for a loan modification.

42. In or around early 2013, Plaintiffs submitted a loan modification application to Shellpoint which was supported by substantial additional monthly income, documenting her ability to afford her home and a modified loan.

43. The income level docmnented to Shellpoint in Plaintiffs' 2013 modification application remains current.

44. Plaintiffs are informed and believe that, at the time of the 2016 loan modification application, through to the present, them and their financial circumstances qualify for a loan modification under one or more of the loan modification programs administered by or available through Shellpoint.

45. Plaintiffs were denied on their loan modification application due to Shellpoint's calculation of negative Net Present Value (NPV).

46. Subsequently, Plaintiffs timely submitted an appeal to Shellpoint's denial of their loan modification application.

47. Plaintiffs' appeal specifically requested that Shellpoint

COMPLAINT FOR DAMAGES          12

explain its calculation of NPV and how it arrived at a decision to deny Plaintiffs's loan modification application on the available loan modification programs.

48. Shellpoint failed to adequately and accurately explain how it calculated Plaintiffs's NPV.

49. In arriving at Plaintiffs' NPV, Shellpoint failed to accurately include Plaintiffs change in financial circmnstances as they are currently receiving more income.

50. Over the next several months of being in the loan modification review process, Plaintiffs consistently submitted financial documents as they were being requested by Shellpoint. Plaintiffs routinely contacted Shellpoint via telephone to inquire about the status of her application, and Plaintiffs was transferred from one agent to another who was not knowledgeable about the status of Plaintiffs loan modification application.

51. To date, Shellpoint has not provided Plaintiffs with an accurate or adequate description of how it calculated Plaintiffs NPV or sufficiently addressed Plaintiffs material change in financial circumstances.

52. On or about December 8, 2014, Defendants executed a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default" or "NOD") against the Subject Property. A true and correct copy of the Notice of Default, recorded on December 8, 2014, is attached as Exhibit B.

53. The NOD contains a false Declaration of Mortgage Servicer Pursuant to Civil Code § 2923.55(b)(2) ("Declaration"), whereby an

authorized agent or employee of the mortgage servicer, Shellpoint, declared that it contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. Thirty (30) days or more have passed since the initial contact was made." The Declaration is dated December 4, 2014 (Exhibit B, p. 3).

54.   The Declaration is signed by "Dorian Bradley," assistant secretary, who certifies that the Declaration is "accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records."

55.   Although Defendants and Plaintiffs were in contact prior to recording the NOD, at no point at least thirty (30) days prior to recording the Notice of Default, and during the initial contact in person or by phone discussion, did Shellpoint advise Plaintiffs of their right to request a subsequent meeting which, if requested, would be scheduled within fourteen (14) days, or provide Plaintiffs with the toll-free telephone number made available by the United States Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency.

56.   In addition, Plaintiffs did not receive a written communication from Defendants dated, or otherwise identified as sent by Defendants, within five (5) business days after the Notice of Default was recorded that included specific information regarding the Plaintiffs eligibility for a foreclosure prevention alternative and the process in which to apply for such alternative.

57.   Notwithstanding Shellpoint's specific representations that

COMPLAINT FOR DAMAGES                    14

foreclosure would not continue, the foreclosure of Plaintiffs property continues. To this date, Plaintiffs have not been provided with an accurate or adequate written determination by Shellpoint regarding Plaintiffs eligibility for a loan modification.

58. Plaintiffs have attempted to contact Shellpoint and their assigned single point of contact, to inquire as to the status of the loan modification review and Plaintiffs submitted documents; however, Plaintiffs have been consistently unable to reach any Shellpoint representative who knowledgeable and/or willing to help them.

59. As a result, Plaintiffs felt helpless and desperate, and decided to retain an attorney's services to assist Plaintiffs in trying to obtain some sort of mortgage assistance from Shellpoint, as Shellpoint has violated and continues to violate the Homeowner's Bill of Rights, by failing to fairly evaluate Plaintiffs application for a loan modification and ignoring Plaintiffs submission and proceeding with foreclosure without issuing Plaintiffs an accurate written denial of her loan modification application.

60. Plaintiffs have been unable to cure the default because of the substantial arrearages, which include unnecessary fees added to the loan balance.

61. As a result of Plaintiffs' frustration and fear of losing their home, the instant action became necessary.

62. Defendants wrongfully delayed Plaintiffs' modification review due to their own ineffective and unreasonably slow processing systems, the financial incentives they received by asking Plaintiffs to submit more than one application and documents in connection

therewith, and their failure to properly train their representatives in compliance with the servicing standards imposed by California law.

63.   Plaintiffs' claims are simple: when large financial institutions promise to modify eligible loans to prevent foreclosures and taxpaying homeowners live up to their end of the bargain, homeowners expect that promise to be kept, especially when those large financial institutions are acting under the guidance of a federal program specifically targeted at preventing foreclosures.

64.   Unbeknownst to Plaintiffs, Defendants, acting as lenders, mortgage servicers, trustees, and/or beneficiaries, received, and continue to receive, a financial incentive on each loan modification application a borrower submits. Because of this type of incentive, Defendants benefit from allowing Plaintiffs' modification requests to become stale and advising Plaintiffs to re-apply for a modification or resubmit documents, rather than actually reviewing Plaintiffs's application.

65.   The foregoing acts and material omissions of the Defendants herein alleged were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' notice and disclosure rights.

66.   Defendants, as employers of the authorized representatives who had contact with Plaintiffs, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or

malice.

67.   Defendants are corporate employers. As such, their officers, directors, and/or managing agents had advanced knowledge of the willful and despicable conduct herein alleged and ratified the aforementioned acts of their authorized representatives and employees.

68. Plaintiffs have been harmed by Defendants' failure to provide accurate material disclosures and notices so that Plaintiffs can cure any default and extinguish the transaction by operation of law.

69. Defendants are acting in concert to deprive Plaintiffs of their civil rights by attempting to take the Subject Property without due process of law.

70. Plaintiffs are ready, willing and able to enter into a loss mitigation program that is affordable for Plaintiffs and more profitable to Defendants than a foreclosure, and Plaintiffs are ready, willing and able to make such payments at the times required of him by law.

# VII
# FIRST CAUSE OF ACTION
# VIOLATIONS OF CAL. CIVIL CODE §2923.6
# (AS TO ALL DEFENDANTS)

71.   Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

72.   Pursuant to Civil Code §2924.15, Civil Code §2923.6 applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four ( 4) dwelling units. For these purposes, "owner-occupied" means that the property

COMPLAINT FOR DAMAGES          17

is the principal residence of the borrower as indicated in loan documents. Here, the Subject Property contains no more than four (4) dwelling units, and the Subject Property is Plaintiffs' principal residence, indicated in the loan documents. Therefore, Plaintiffs may bring this action for possession under Civil Code §2923.6.

73.   California Civil Code §2923.6(c) states that once a borrower submits an application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, the servicer SHALL NOT record a Notice of Default or Notice of Sale, or conduct a Trustee's sale, while the application is pending, and until any of the following occurs:

> a.   The mortgage servicer makes a written determination that the borrower is not eligible for a foreclosure prevention alternative AND any appeal period has expired;
> b.   The borrower does not accept an offered foreclosure prevention alternative within
> fourteen (14) days of the offer; OR
> c.   The borrower accepts a written foreclosure prevention alternative, but defaults on the loan modification or otherwise breaches his/her obligations under the foreclosure prevention alternative.

Civil Code §2923.6(g) states that the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a foreclosure prevention alternative prior to January 1, 2013, unless there has been a material change in the borrower's financial

COMPLAINT FOR DAMAGES          18

circumstances since the date of the borrower's previous application AND that change is documented by the borrower and submitted to the mortgage servicer.

75.   As set forth herein, Plaintiffs have not been fairly evaluated for a foreclosure prevention alternative, including a loan modification, nor has they been afforded a fair opportunity to be evaluated and there has been a material change in Plaintiffs' financial circumstances, and that change has been documented and submitted to Defendants.

76.   During Plaintiffs' long-term struggle to get a loan modification, Plaintiffs have been led through endless document requests, and Plaintiffs have never been provided a meaningful response to their inquiries and never given an accurate valid final determination regarding her loan modification review. Plaintiffs have been continuously advised to re-submit new packages, as Shellpoint's representatives had no information regarding Plaintiffs' pending application. Accordingly, Plaintiffs was never afforded a fair opportunity to be evaluated for a foreclosure prevention alternative, and was not fairly evaluated for a foreclosure prevention alternative. This is a violation of Civil Code §2923.6.

77.   In or around early 2013, Plaintiffs submitted a loan modification application to Shellpoint which was supported by substantial additional monthly income, documenting her ability to afford her home and a modified loan.

78. Plaintiffs had a material change in financial circumstances since the date of their previous application for a first lien loan

modification with Defendants and this change has been memorialized and submitted to Defendants. Plaintiffs resubmitted their application with updated financial documents and proof of her correct income value directly to Shellpoint after being advised by Shellpoint's representative that she had to resubmit a new and complete application for a loan modification due to the change in her financial circumstances. However, to date, Defendants have failed to acknowledge or consider this change in financial circumstances in their calculations for a Joan modification.

79. As a result of Plaintiffs' material change in their financial circumstances, they are in a much better position to make affordable mortgage payments, if they were just given the chance by Shellpoint.

80. Despite these facts, Defendants failed to respond or otherwise agree to review Plaintiffs' application based on the documented material change in Plaintiffs' financial circumstances. In addition, Defendants have failed to provide an accurate final determination on the loan modification review based on the material change in Plaintiffs' financial circumstances, as required under Civil Code §2923.6. These are clear violations of Civil Code §2923.6.

81. Pursuant to Civil Code §2923.6, Defendants are obligated to evaluate Plaintiffs' application for any and all available foreclosure prevention alternatives, including a loan modification, due to the material change in Plaintiffs' financial circumstances which has been documented and submitted to the mortgage servicer.

82. Defendant Shellpoint was and currently remains in possession of Plaintiffs' application, and Shellpoint has been informed of the

1  material change in Plaintiffs' financial circumstances. However,
2  Shellpoint has not agreed to re-evaluate Plaintiffs' application for
3  any and all available foreclosure prevention alternatives. This is
4  another clear violation of Civil Code §2923.6.

5      83.  As a result of Defendants' failure to comply with Civil Code
6  §2923.6, Plaintiffs have incurred costs associated with the
7  foreclosure action since its commencement and have sought, and
8  continue to seek, an assessment of his financial situation and
9  consideration for a first lien loan modification and any other
10 foreclosure prevention programs offered by and through Defendants
11 pursuant to the provisions of HBOR, and specifically, Civil Code
12 §2923.6.

13     84. Pursuant to Civil Code §§2924.12 and 2924g, Plaintiffs seek
14 an order enjoining Defendants proceeding with foreclosure until
15 Defendants have corrected and remedied their material violations of
16 Civil Code §2923.6 as alleged herein.

17     85. As a result of Defendants' wrongful acts and omissions,
18 Defendants are liable to Plaintiffs for any and all statutory and/or
19 actual damages which have resulted from their conduct. If Defendants
20 fail to correct their violations, Plaintiffs is entitled to actual
21 damages, attorneys' fees, and treble damages for Defendants' material
22 and uncorrected violations of Civil Code §2923.6.

23 / /
24 / /
25 / /
26 / /
27

28 COMPLAINT FOR DAMAGES              21

# VIII.

# SECOND CAUSE OF ACTION

# VIOLATIONS OF CAL. CIVIL CODE §2923.55
# (AS TO ALL DEFENDANTS)

86. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

87. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent cannot record a notice of default until 30 days after: (i) the mortgage servicer makes "initial contact" with the borrower, as required by Civil Code § 2923 .55(b )(2), or (ii) the mortgage servicer satisfies the "due diligence" requirements of Civil Code § 2923.55(f) if unable to contact the borrower.

88. The notice of default must include a declaration that the mortgage servicer contacted the borrower as required by the statute or, in the alternative, attempted such contact with due diligence, or that contact was not required because the individual did not meet Civil Code § 2920.5's definition of "borrower."

89. Defendants recorded the Notice of Default with a false declaration of compliance with Civil Code §2923.55. The Declaration attached to the Notice of Default avers that Shellpoint tried with due diligence to contact Plaintiffs as required by Civil Code §2923.55(b)(2), but has not made contact despite such due diligence, and 30 days or more have passed since the due diligence efforts were satisfied. (Exh. B, p. 3.)

90. Plaintiffs allege that Shellpoint did not contact them or attempt to contact them with due diligence as required by the statute,

COMPLAINT FOR DAMAGES                22

and Plaintiffs were at all relevant times "borrowers" as defined by Civil Code § 2920.5(c).

91.   However, at no point at least 30 days prior to recording the Notice of Default, and during an initial in person or telephone discussion, did Shellpoint advise Plaintiffs of their right to request a subsequent meeting which, if requested, would be scheduled within 14 days. At no point at least 30 days prior to recording the Notice of Default, and during the initial discussion or a subsequent meeting, did Shellpoint provide Plaintiffs with the toll-free telephone number made available by the United States Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency.

92.   Shellpoint's failure to make actual contact with Plaintiffs did not occur despite its "due diligence." Plaintiffs provided Shellpoint with their current primary and secondary phone numbers. However, at no point at least 30 days prior to recording the Notice of Default did Shellpoint call Plaintiffs at their primary phone number at least three times at different hours and on different days and by means such that, if Plaintiffs answered, the call was connected to a live representative. At no point at least 30 days prior to recording the Notice of Default, and within two weeks after satisfying the telephone requirements, did Shellpoint send Plaintiffs a certified letter, with return receipt requested. At no point at least 30 days prior to recording the Notice of Default did Shellpoint provide Plaintiffs a means of contact that offered access to a live representative in a timely manner.

93.   The Notice of Default was recorded before Shellpoint

contacted, or diligently attempted to contact, Plaintiffs to discuss alternatives to foreclosure as contemplated by the statute. HBOR was enacted to combat the foreclosure crisis and hold lenders accountable for exacerbating it. Defendants' failure to comply with the statute's pre-NOD outreach procedures undermines the intent of the statute and serves to perpetuate the servicer misconduct and foreclosure abuses specifically targeted by the HBOR legislation.

94.   In addition, noncompliance with the statute renders the Notice of Default invalid and void as a matter of law. A trustee's sale cannot proceed unless and until Defendants record a notice of default that contains a declaration that is accurate and supported by competent and reliable evidence. If the declaration is false, then the notice of default itself is false, since the declaration must be attached to the notice. Moreover, the Notice of Default is invalid, since contact, or diligent effort to contact, is a statutory prerequisite to filing the Notice of Default.

95.   As a result of Defendants' wrongful acts and omissions, Plaintiffs have incurred costs associated with the improper foreclosure action in that Plaintiffs have been precluded the procedural protections afforded borrowers by the statute and now face the imminent foreclosure of the Subject Property. Plaintiffs have sought, and continue to seek, an assessment of their financial situation and consideration for foreclosure alternatives offered by, or through, Shellpoint, as contemplated by the provisions of HBOR.

96. Pursuant to Civil Code §§ 2924.12 and 2924g, Plaintiffs seek an order enjoining Defendants from proceeding with foreclosure unless

and until Defendants have corrected and remedied their material violations of Civil Code § 2923.55.

# IX.
# THIRD CAUSE OF ACTION
# VIOLATIONS OF CAL. CIVIL CODE Â§2923.7
# (AS TO ALL DEFENDANTS)

97. Plaintiffs re-allege and incorporate by reference, all paragraphs above, as though fully set forth in this cause of action.

98. Civil Code §2923.7 requires that upon a borrower's request for a foreclosure prevention alternative, the mortgage servicer is required to promptly establish a single point of contact ("SPOC") and provide one (1) or more direct means of communication with the SPOC during the foreclosure prevention alternatives process.

99. "Foreclosure prevention alternative" means a first lien loan modification or other available loss mitigation option. Cal. Civ. Code §2920.5(b ).

100. The SPOC may be an individual or a team of personnel, but the mortgage servicer must ensure the individual and/or each team member are knowledgeable about that borrower's situation and current status in the alternatives to foreclosure process.

101. Importantly, the SPOC "shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted ... " or the borrower's account becomes current. Civil Code Â§2923.7(c).

102.The SPOC is responsible for (I) effectively communicating the

COMPLAINT FOR DAMAGES                25

application process and deadlines for available foreclosure prevention alternatives, (2) coordinating receipt of all documents and notifying the borrower of any missing documents necessary to complete an application, (3) timely, accurately, and adequately informing the borrower of the status of their application, (4) ensuring the borrower is considered for any and all foreclosure prevention alternatives offered by, or through, the mortgage servicer, and (5) stopping foreclosure proceedings when necessary.

103. Defendants failed to assign Plaintiffs a representative or team or representatives each of whom were knowledgeable about Plaintiffs' situation and current status the alternatives to foreclosure process, and wiling, able and authorized to perform the foregoing responsibilities with respect to Plaintiffs' efforts to obtain an alternative to foreclosure.

104. Defendants were obligated to communicate the process by which Plaintiffs may apply for an available foreclosure prevention alternative. However, Defendant Shellpoint refused to communicate accurate information regarding available programs or the process by which Plaintiffs could obtain and submit an application for loss mitigation assistance.

105. Defendants failed to assign a SPOC that was able or authorized to ensure that Plaintiffs would be considered for all available foreclosure prevention alternatives, and who would remain assigned to Plaintiffs' account until it is determined that Plaintiffs have exhausted all available options. Defendants' representatives who were in contact with Plaintiffs provided inaccurate and misleading

information regarding the status of foreclosure proceedings, to Plaintiffs' detriment. In fact, the representatives in contact with Plaintiffs discouraged Plaintiffs from pursuing any loss mitigation option whatsoever.

106. Defendants assigned various loss mitigation representatives to assist Plaintiffs during the loss mitigation review process; however, Plaintiffs' numerous calls to her assigned point of contact went unanswered and unreturned. Plaintiffs was never able to reach the representative to ascertain the status of her application. Instead, Plaintiffs' phone calls were transferred to various automatic answering machines, or to random customer service representatives each of whom was either unfamiliar with the status of foreclosure and Plaintiffs' application or not authorized to obtain current loss mitigation updates. The representatives Plaintiffs spoke with were not knowledgeable about Plaintiffs' loan modification application status and, consequently, Plaintiffs was left submitting and resubmitting requested documents despite having submitted the same documents to earlier representatives.

107. Plaintiffs have incurred costs associated with the foreclosure action since its commencement and have sought, and continues to seek, information regarding and consideration for any foreclosure prevention programs offered by and through Defendants, and specifically Civil Code §2923.7.

108. As a result of the above-described wrongful acts and omissions, Plaintiffs have been precluded from their rights granted by Civil Code §2923.7.

109. Pursuant to Civil Code §§2924.12 and 2924g, Plaintiffs seek an order enjoining Defendants proceeding with foreclosure unless and until Defendants have corrected and remedied the material violations of Civil Code §2923.7 alleged herein.

110. Pursuant to Civil Code §§2924.12 and 2924g, Plaintiffs are entitled to actual damages, attorneys' fees, and treble damages for Defendants' material and uncorrected violations of Civil Code §2923.7 alleged herein.

## X.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE
## (AS TO ALL DEFENDANTS)

111. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

112. Shellpoint, acting as Plaintiffs' lender, servicer and beneficiary, undertook a review of Plaintiffs's Loan for modification and having done so it owed Plaintiffs the duty to exercise reasonable care in processing and reviewing their applications for loan modifications.

113. Shellpoint breached its duty by (1) failing to review Plaintiffs's applications in a timely manner, (2) misrepresenting the status of Plaintiffs's loan modification applications; and (3) initiating and continuing foreclosure in violation of public policy and statutory restrictions on dual-track foreclosures.

114. Plaintiffs's complete loan modification application was in process in 2013 and 2014. Shellpoint received all the documents and

COMPLAINT FOR DAMAGES          28

1  information Plaintiffs gave Shellpoint as part of the loan
2  modification review process, thus, Plaintiffs had a complete loan
3  modification application in review and Shellpoint undertook a review
4  of Plaintiffs' application.

5      115. The transaction was intended to affect Plaintiffs and it was
6  entirely foreseeable that failing to timely and carefully process the
7  loan modification applications could result in significant harm to
8  Plaintiffs in that the decision on Plaintiffs' application would
9  determine whether she could keep the home. In addition, Plaintiffs'
10  credit rating would be adversely affected, thereby making it more
11  difficult for Plaintiffs to secure alternative financing to cure the
12  default.

13      116. The injury to Plaintiffs is certain. The mishandling of the
14  documents deprived Plaintiffs of the possibility of obtaining loss
15  mitigation assistance and Plaintiffs now faces imminent foreclosure
16  and eviction from their family home.

17      117. There is a close connection between Shellpoint's conduct and
18  Plaintiffs' injuries. To the extent Plaintiffs otherwise qualified and
19  would have been granted a modification, Shellpoint's conduct in
20  misdirecting the papers submitted by Plaintiffs directly precluded the
21  loan modification application from being timely processed. Plaintiffs
22  now face imminent foreclosure as a result of Shellpoint's initiating
23  and continuing foreclosure action in violation of HBOR's restrictions.

24      118. The policy of preventing future harm favors imposing a duty
25  of care on an entity in Shellpoint's position. In fact, this is
26  evidenced by the fact that the State of California, through

27

28  COMPLAINT FOR DAMAGES          29

legislation, has enacted the Homeowner's Bill of Rights in an effort to prevent future harm from unnecessary and wrongful foreclosures.

119. As a direct and proximate result of the negligence and carelessness of Shellpoint and its representatives Plaintiffs have suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

120. At all times relevant herein, Defendants, acting as Plaintiffs' lender and servicer and beneficiary to Plaintiffs' loan, had a reasonable duty to exercise reasonable care and skill to maintain proper and accurate loan records, and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to:

a.   Keeping an accurate accounting of Plaintiffs' mortgage payments, credits, and debits;

b.   Disclosing to Plaintiffs the status of any foreclosure actions taken by Defendants;

c.   Refraining from taking any action against Plaintiffs that they did not have the legal authority to do; and

d.   Providing Plaintiffs with all relevant information regarding the Loan and review for foreclosure prevention alternatives.

121. In addition, Defendants stepped outside their conventional duties as a lender and servicer and assumed additional responsibilities when they dispatched letters advertising their mortgage assistance programs and undertook efforts to consider borrowers, including Plaintiffs, for loss mitigation options, including loan modifications.

122. Those additional responsibilities include the proper implementation of available foreclosure prevention alternatives, and following the new duties found in the California Homeowner's Bill of Rights, so that Plaintiffs would be properly and fairly evaluated for a suitable foreclosure prevention alternative, including a loan modification.

123. When Defendants engaged in the servicing of Plaintiffs' Loan, their actions of assuming additional responsibilities in addition to reviewing Plaintiffs for a modification, were intended to affect Plaintiffs and his property because Plaintiffs was in direct contact and negotiations with Defendants, Defendants' representations were made directly to Plaintiffs, and were likely to, and intended to, affect Plaintiffs' decision making with respect to her property.

124. Plaintiffs allege, on information and belief, that the harm to Plaintiffs were a foreseeable result of Defendants' negligence, given Defendants' numerous verbal promises, and Plaintiffs's justifiable reliance on those promises by foregoing alternative options to avoid foreclosure.

125. Defendants knew, or reasonably should have known, that if they failed to negotiate with Plaintiffs in good faith, Plaintiffs would fall deeper into default and Plaintiffs would face foreclosure of the home. In addition, by defaulting on his mortgage payments Plaintiffs's credit rating would be adversely affected, thereby making it more difficult for Plaintiffs to secure alternative financing to cure the default.

126. Plaintiffs allege, on information and belief, that

Defendants breached their duty of care and skill to Plaintiffs, in the servicing of Plaintiffs's loan by, among other things:

a.   Engaging in a pattern and practice of making promises to Plaintiffs that Defendants' representatives knew would not be honored;

b.   Failing to implement the requirements of the 2013 California Homeowner's Bill of Rights, the Truth in Lending Act, and the Loss Mitigation requirements of the 2012 National Mortgage Settlement;

c.   "Dual-tracking" Plaintiffs toward foreclosure and recording a Notice of Default and Notice of Sale during the purported loan modification "review" in violation of Civil Code §2923.6(c), and despite firm assurances that no foreclosure activity would take place against the Property while Plaintiffs's loan modification application was in review;

d.   Failing to fairly evaluate Plaintiffs's Loan for an alternative to foreclosure, including a loan modification, even after a material change in the borrowers' financial circumstances has been documented and submitted to the mortgage servicer, pursuant to Civil Code §2923.6;

e.   Failing to promptly establish a single point of contact to remain on Plaintiffs's account and ensure that Plaintiffs is reviewed for any and all foreclosure prevention alternatives offered by, and through, the mortgage servicer pursuant to Civil Code §2923.7;

f.   Sending Plaintiffs false and misleading advertisements misrepresenting the availability of options to save Plaintiffs's home and leading Plaintiffs to believe that Defendants would and could qualify Plaintiffs for a foreclosure prevention plan and avoid a

COMPLAINT FOR DAMAGES          32

Trustee's sale all in a matter of days;

g.   Failing to sufficiently train loss mitigation staff and failure to maintain adequate systems for tracking borrower documents and information that are relevant to foreclosure and loss mitigation, so that Plaintiffs could receive consistent and accurate information from one phone call to the next, and the like;

h.   Failing to notify Plaintiffs that they were foreclosing on Plaintiffs's property, while, in fact, telling Plaintiffs the opposite, ultimately confusing and misleading Plaintiffs; and

i.Foreclosing on the Property without having the legal authority to do so.

127. Plaintiffs allege, on information and belief, that as a result of Defendants' negligence, Plaintiffs have suffered from (i) substantial arrearages, which include additional and unnecessary interest and fees; (ii) an adverse effect on her credit scores; (iii) a loss of the equity in her home; and (iv) being precluded from their rights and protections under the Homeowner's Bill of Rights.

128. Plaintiffs allege, on information and belief, that Plaintiffs's injury was a direct result of Defendants' negligent conduct, as Defendant's misrepresentations of the availability of obtaining a foreclosure prevention alternative was a significant factor in causing Plaintiffs' injuries. In addition, Defendants are responsible for Plaintiffs' injury due to the fact that Defendant benefitted from denying Plaintiffs' requests for a foreclosure prevention alternative.

129.Plaintiffs allege, on information and belief, that Defendants

are responsible for Plaintiffs' injury due to the fact that Defendant benefitted from failing to provide a loan modification upon Plaintiffs' requests for a foreclosure prevention alternative.

130. Moreover, Plaintiffs justifiably relied on the written and oral representations of Defendants, to her detriment. In fact, throughout modification process, Plaintiffs continued to comply with Defendants' instructions, submitted documents requested for the modification review, and did not pursue other alternatives to foreclosure during the time.

131. Plaintiffs are informed and believe, and on that basis, allege that had Defendants used proper skill and care in the handling of Plaintiffs' matter, Plaintiffs would have had a fair opportunity to avoid foreclosure proceedings, and Plaintiffs would have been able to enter into a modification that was affordable for Plaintiffs and more profitable to Defendants than a foreclosure.

132. As a direct and proximate result of the negligence of Defendants and their representatives as set forth above, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at trial.

# XI.
# FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
## (AS TO ALL DEFENDANTS)

133. Plaintiffs re-allege and incorporate by reference, all paragraphs above, as though fully set forth in this cause of action.

134. Defendant Shellpoint has fraudulently misled Plaintiffs to

believe that Shellpoint was going to work with Plaintiffs to obtain a long term solution for Plaintiffs' Loan. Plaintiffs have been fraudulently misled into believing that a long term solution to keep her in her home was being worked on and that foreclosure proceedings would not initiate on her home.

135. Plaintiffs reasonably relied on Defendants' representations and continued to spend their valuable money, time, and efforts in attempting to modify the Loan and providing the information requested, which Plaintiffs had submitted, only in an effort to obtain a loan modification or other "resolution" and long-term solution.

136. Defendant Shellpoint made its representations without a reasonable ground for believing it to be true under these circumstances, and Shellpoint made each material representation with the intent to induce Plaintiffs' reliance on the fact misrepresented, and to deceive Plaintiffs. Plaintiffs had every reason to believe the truth of such representations and did so. Plaintiffs reasonably relied upon such representations.

137. Defendant Shellpoint owes Plaintiffs duties under common law, California statutory laws, and Federal rules and regulations. However, Shellpoint asserted facts that were not true, or concealed true facts, having no reasonable ground for believing it to be true, intending Plaintiffs to rely upon the assertions as to the review of her loan modification application.

138. Defendants' conduct was done in reckless disregard of Plaintiffs' rights, the rights of others similarly situated, and/or facilitated by recklessly, negligently, or knowingly creating and

1   training management and systems, not limited to computer systems or
2   corporate policies and practices, which are defective, negligently
3   designed, causing damage to Plaintiffs.

4   139. Plaintiffs are informed and believe that at the time
5   Defendant Shellpoint made the misrepresentations herein alleged,
6   Defendant Shellpoint was acting knowingly and maliciously to form and
7   further the common plan and scheme to defraud Plaintiffs. All
8   Defendants acted, aided, and abetted other Defendants within the
9   course and scope of their agency, employment, and authority to achieve
10  the common plan and scheme.

11  140. Shellpoint's conduct constitutes fraud, deceit, and false
12  promises made without the intent to perform, and intentional
13  misrepresentation, among other wrongs. Shellpoint's acts, omissions,
14  and concealment were unlawful, and constitute a breach of legal and
15  equitable duties owed to Plaintiffs, and a breach of promises made in
16  writing, on the phone, in the Deed of Trust, and other loan documents,
17  ultimately resulting in damage

18  141. Plaintiffs are informed and believe that, at all times,
19  Shellpoint knew the terms of the 1987 Deed of Trust, yet still failed
20  to service the Loan at the correct interest rate.

21  142. As an actual and proximate result thereof, Plaintiffs has
22  suffered harm, and has been required to retain counsel to bring an
23  action to stop imminent foreclosure proceedings of her home.
24  Plaintiffs is entitled to recover all attorneys' fees and costs as a
25  result of Defendants' conduct and to seek injunctive relief to enjoin
26  future harmful conduct.

27

28  COMPLAINT FOR DAMAGES          36

143. As a result of the foregoing misrepresentations, and Plaintiffs's justifiable reliance thereon, Plaintiffs are entitled to recover damages according to proof at trial, including general, special, pecuniary loss, and punitive damages, caused by Defendants' misrepresentations.

# XII.
# SIXTH CAUSE OF ACTION BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (AS TO ALL DEFENDANTS)

144. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

145. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

146. In every contract there is an implied covenant of good faith and fair dealing that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.

147. The law implied a covenant in all contracts that each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.

148. Moreover, the covenant imposes on each party to the contract the duty to refrain from doing anything which would render performance of the contract impossible by any act their own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose.

149. In essence as Shellpoint is the servicer, Shellpoint and

1   Plaintiffs entered into the 1987 Deed of Trust (Exhibit A).

2      150. Shellpoint breached the implied covenant of good faith and

3   fair dealing by improperly raising the interest rate on the Loan.

4      151. As a direct and proximate result of Shellpoint's breach,

5   which was, in part, caused by Shellpoint's negligence, Plaintiffs has

6   been damaged in an amount according to proof at trial.

# XIII.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF REGULATION X
## AND REGULATION Z
## (AS TO ALL DEFENDANTS)

12      152. This action seeks to enforce the amended Regulation X, 12

13   C.F.R. Section 1024.30 through Section I 024.41, and also amended

14   Regulation Z, Section I 026.36, both made effective January 10, 2014.

15      153. This case arises from Shellpoint's willful failure and/or

16   complete disregard of the rights of Plaintiffs arising from

17   Shellpoint's statutory obligations and duties under Regulation X of

18   RESP A and Regulation Z of TILA. Plaintiffs allege that they are

19   entitled to statutory damages and actual damages suffered as a result

20   of Shellpoint's willful and intentional failure to comply with these

21   Regulations, including, but not limited to, the time and expense spent

22   attempting to obtain Shellpoint's compliance, and the emotional and

23   psychological harm suffered as a result of Shellpoint's persistent

24   non-compliance.

25      154. The Loan at issue in this case is a "federally related

26   mortgage" as that term is defined by Regulation X of RESP A, 12 C.F.R.

§ 1024.S(a); Shellpoint is subject to Regulation X of RESPA, 12 C.F.R. § 1024.S(a) and Shellpoint is not subject to any of the small servicer exceptions as provided for by 12 C.F.R. § 1026.41(e)(4)(ii).

155. Plaintiffs allege that the Shellpoint must comply with written Requests for Information ("RFI") related to the servicing of a federally related mortgage loan under 12 C.F.R. § I 024.36 of Regulation X of the Mortgage Servicing Act under RESP A. RESP A, in its detailed Regulation X, mandates that a mortgage servicer must respond to written requests from a borrower that relate to the servicing of a mortgage (12 U.S.C. § 2605(e); 12 C.F.R. § 1024.36(c)) by acknowledging receipt of such correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) and by thereafter providing the requested information within 30 days (excluding legal public holidays, Saturdays, and Sundays), except a request for the Owner of the Note which requires a response within 10 days (excluding legal public holidays, Saturdays, and Sundays). When a non-response to the RF! or production date occurs, borrowers can notify a servicer of its non-compliance with the regulatory requirements through a Notice of Error ("NOE"). Non-compliance includes non-acknowledgment of receipt, non-responses, or if responses are inadequate, incomplete, or contain errors in the information provided.

156. Plaintiff through their representative mailed several RFIs to Shellpoint.

157. Plaintiffs allege upon information and belief that Shellpoint failed to acknowledge and provide accurate and complete

responses to the RFIs described above, and each of them, within 30 days (excluding legal public holidays, Saturdays, and Sundays) after receipt.

158. To date, Shellpoint has yet to accurately and adequately respond or correct the errors contained in the RF! letters, described above.

159. The foregoing acts and material omissions of Shellpoint alleged herein were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' notice and disclosure rights.

160. As a result of Shellpoint's acts and omissions alleged hereinabove, Plaintiffs have been harmed in that they have expended significant time and money in her actions seeking correction of such errors. Plaintiffs have suffered actual damages such as the costs of copying documents, postage fees, loss of work fees, traveling expenses to and from their attorney's office, interest and penalties on the Loan, emotional and psychological trauma and other issues of damages related to Shellpoint's failure to accurately and completely respond to Plaintiffs' RFI letters to which Shellpoint has yet to respond. The total amounts of damages have not been computed at this time, but will be provided by either an amended pleading or through the discovery process.

161. Defendants, as employers of the authorized representatives who had contact with Plaintiffs, had advanced knowledge of the unfitness of their employee representatives and employed such representatives with a conscious disregard of the rights or safety of

COMPLAINT FOR DAMAGES                    40

1  others, or authorized/ratified the wrongful conduct for which the

2  damages are awarded or was personally guilty of oppression, fraud, or

3  malice.

4  **SHELLPOINT MORTGAGE'S PATTERN AND PRACTICE OF VIOLATING REGULATION**

5  **X AND REGULATION Z**

6    162. Plaintiffs restate and incorporate herein all of their

7  statements and allegations contained m all preceding paragraphs in

8  their entirety, as if fully rewritten herein.

9    163. Shellpoint has a pattern and practice of ignoring borrower

10  complaints and requests for information as alleged in actions filed

11  by borrowers that allege conduct by Shellpoint similar to that

12  experienced by Plaintiffs.

13    164. Plaintiffs are informed and believe and upon such

14  information and belief allege that the failures of Shellpoint to

15  comply with the RFI letters in this case are fully consistent with the

16  pattern and practice of failing to comply with RESPA and TILA set

17  forth hereinabove. Plaintiffs allege that the preceding gives rise to

18  sufficiently establish the Plaintiffs' rights for the recovery of

19  statutory damages under RESPA of $2,000.00 and statutory damages under

20  TILA of $4,000.00.

21  # XIV.

22  # EIGHT CAUSE OF ACTION

23  # VIOLATIONS OF CAL. BUSINESS AND

24  # PROFESSIONS CODE §17200

25  # (AS TO ALL DEFENDANTS)

26

27

28  COMPLAINT FOR DAMAGES          41

165. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

193. Plaintiffs bring this action against Defendants pursuant to California Business and Professions Code § 17200, et seq., referred to as the Unfair Competition Law (the "UCL").

166. California Business and Professions Code §17200 prohibits "any unlawful, unfair or fraudulent business act or practice." For the reasons described herein, Defendants have engaged in unfair or fraudulent business acts or practices in violation of Bus. and Prof. Code § 17200, et. seq.

167. The Court has jurisdiction over this action pursuant to California Bus. and Prof. Code§ 17200, et seq., specifically Bus. and Prof. Code § 17203, which provides that any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and Bus. and Prof. Code §§ 17204, which provides for actions for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association, or by any person acting for the interests of itself, its members or the general public.

168. Plaintiffs believe and hereby contend that, at all times relevant to this Complaint, Defendants have violated Bus. and Prof. Code § 17200's prohibition against engaging in unlawful acts and practices by making representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§2923.55, 2923.6, 2923.7, 2924.10, 2924(a)(6), CA Business and Professions Code § 17200 et seq., the Homeowner's Bill of Rights, the 2012 National Mortgage Settlement, and other state, federal, and common law.

169. Plaintiffs allege that Defendants' violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior which is ongoing and continues to this date.

170. As alleged herein, Defendants engaged in deceptive business practices with respect to the servicing of Plaintiffs's mortgage loan, the evaluation of Plaintiffs for foreclosure prevention alternatives, the non-judicial foreclosure of the Subject Property, and related matters, by, among other things:

a. Failing to implement and follow the requirements of the 2013 Cal. Homeowner's Bill of Rights, the Federal Truth in Lending Act, and the 2012 National Mortgage Settlement;

b. Engaging in a pattern and practice of misrepresenting to borrowers, including Plaintiffs, the likelihood of qualifying for a loan modification or other work out option, and inducing borrowers to continue with the modification review process while knowing that no such permanent modification would be forthcoming despite assurances otherwise;

COMPLAINT FOR DAMAGES                43

c.    Recording the NOD, with a false and defective Declaration that would have this Court believe that Defendants complied with the provisions of Civil Code §2923.55(c), prior to recording the NOD on the Subject Property, when, in fact, there was no such compliance;

d.    Recording the NOD without sufficiently contacting Plaintiffs or attempting with due diligence to contact Plaintiffs in order to assess his financial situation and explore options to avoid foreclosure in violation of Civil Code §2923.55;

e.    Violating Civil Code §2923.6(c), by "dual-tracking" Plaintiffs, and recording the NOD, the NTS and proceeding with conducting a foreclosure sale on the Subject Property while Plaintiffs's application for a foreclosure prevention alternative was in "review" and without providing Plaintiffs with a written determination of his loan modification request;

f.    Failing to establish a knowledgeable single point of contact who had the ability and authority to perform the responsibilities described in Civil Code §2923.7, and ensure the single point of contact remained assigned to the account until Plaintiffs had been reviewed for all foreclosure prevention alternatives offered by or through the mortgage servicer;

g.    Failing to, within five (5) business days after recording the NOD, send Plaintiffs a written communication with information regarding eligibility for a foreclosure prevention alternative and the process in which to apply for such alternative as required by §2924.9;

h.    Recording documents, declarations and affidavits in connection with a foreclosure of the Subject Property which are not

COMPLAINT FOR DAMAGES                    44

accurate and complete and supported by competent and reliable evidence in violation of Civil Code §2924.17;

i.   Engaging in negligent conduct in assessing Plaintiffss loan for foreclosure prevention alternatives, including a loan modification;

j.  Making misrepresentations and false promises designed to deceive Plaintiffs into thinking that   he was safe from foreclosure and would be receiving a loan modification when Defendants knew or should have known that was not true;

k.   Sending Plaintiffs false and misleading advertisements misrepresenting the availability of options to save Plaintiffss home and misleading Plaintiffs, and other similarly situated borrowers, to think that they could save their home in a matter of days if they just called Defendants for help;

l.  Instituting improper or premature foreclosure proceedings to generate unwarranted fees and concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs's account;

m. Misrepresenting the foreclosure status to Plaintiffs regarding his property; and

n.   Foreclosing on the Subject Property without the legal authority or just cause to do so.

171. As stated in this Complaint, Plaintiffs allege violations of homeowner and borrower protections, unfair competition, among others, under California law, resulting in harm to Plaintiffs. Plaintiffs assert violations of the public policy of engaging in false

and misleading advertisement, unfair competition, and deceptive conduct towards borrowers. This constitutes violations of the unfair prong of Bus. and Prof. Code § 17200, et seq.

172. Bus. and Prof. Code § 17200 prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with knowledge of its effect, and was done to induce Plaintiffs to pay the marked-up and/or unnecessary fees for default-related services. As a result of Defendants' conduct, Plaintiffs has suffered injury in fact and has lost money.

173. In the course and conduct of their loan servicing and collection, Defendants omitted a true itemization that identifies the nature of each fee, and they failed to disclose the nature of the charges and fees assessed. Defendants concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiffs and members of the general public believe they are obligated to pay the amounts specified in Defendants' communications for default-related services. Had the true nature of the fees been disclosed to Plaintiffs, he would have been aware of the mark-ups and unnecessary nature of the fees, and Plaintiffs would have disputed the charges, not paid them.

174. By offering mortgage assistance and leading borrowers to believe such assistance is being considered while the foreclosure process is underway is an irreparable injury to Plaintiffs after

Plaintiffs has relied on Defendants' offers to assist him with his mortgage. This has prevented Plaintiffs from pursuing other workout options such as deed in lieu of foreclosure, short sale, repayment plan, reinstatement, forbearance, and the like. Furthermore, the false promises and false statements of Defendants, and each of them, were designed to unfairly prejudice Plaintiffs and profit from Plaintiffss loss.

175. Defendants' omissions of material facts, as hereinabove alleged, constitute "unlawful" practice because they violate Title 18 United States Code §§ 1341, 1343, and 1962, California Civil Code,§§ 1572, 1573, 1709, 1710,and 1711,and the common law.

176.Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under Bus. and Prof. Code § 17200, et seq., in that said acts and practices offend public policy and are substantially injurious to Plaintiffs and all consumers. Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial hann to Plaintiffs, other consumers, and potential homeowners.

177. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts under § 17200 in that said acts and practices are likely to deceive the public and effect consumers' legal rights and obligations. Defendants' acts, including, but not limited to, active deception, falsifying and/or failing to deliver material documents, and concealment of information, serve to prevent consumers from exercising rights to which they are entitled.

178. Defendants' acts and omissions were in furtherance of a

common plan and scheme to obtain money, title and possession from Plaintiffs, and others similarly situated, by unlawful promises and denial of modification evaluations, wrongful foreclosures, in part by systematically violating the 2012 National Mortgage Settlement, the Federal Truth in Lending Act, the California foreclosure statutes, fraud laws, statutory foreclosure and trustee notice requirements, and the terms of the subject Deed of Trust

179. The illegal acts of Defendants alleged herein are a serious threat to Plaintiffs because these acts have allowed, or will allow, Defendants to wrongfully foreclose on the Subject Property, to transfer title to or interest in the Subject Property, and to cause the imminent eviction of Plaintiffs from his home. Because of Defendants' illegal actions, Plaintiffs will be forced out of his home. Such eviction will cause Plaintiffs to suffer further immediate and irreparable injury, loss, and damage

180. As a result of Defendants' unlawful, unfair, and fraudulent conduct, Plaintiffs has suffered and will continue to suffer substantial injury, including personal, pecuniary, and irreparable injury, by loss and interference with Plaintiffs's rights, including his right to obtain a proper evaluation for all loan modification programs, and to prevent and defeat the wrongful foreclosure.

181. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct alleged herein, Plaintiffs are in imminent risk of losing his home. The imminent threat and risk of foreclosure constitutes injury-in-fact because it is concrete and particularized as to the property in question and initiation of

foreclosure proceedings puts Plaintiffs interest in his property sufficiently in jeopardy to constitute injury under § 17200.

182. Due to Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs have suffered a substantial ascertainable loss and, therefore, pursuant to Business and Professions Code §§ 17203 and 17204, Defendants should be enjoined from continuing such practices.

183. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiffs have lost equity in their home. Defendants' charging of marked up and excess fees has resulted in damage to Plaintiffs's tangible interest in their property. This loss of equity should be credited back to Plaintiffs, and constitutes a loss of money. Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business act or practice.

184. In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

## XV.
## NINTH CAUSE OF ACTION
## UNFAIR DEBT COLLECTION; Rosenthal Fair Debt Collection Practices Act California Civil Code Â§1788 et seq.
## (AS TO ALL DEFENDANTS)

185. Plaintiffs re-allege, and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

COMPLAINT FOR DAMAGES            49

186. Defendants are "debt collectors" attempting to collect a "debt" within the meaning of Rosenthal    Fair Debt Collection Practices Act, Cal. Civil Code Section 1788 et seq. (the "Rosenthal Act") and are engaged debt collection practices under the Rosenthal Act.

187. The Rosenthal Act prohibits, among other things, the use of any false representation or deceptive means to collect or attempt to collect any debt. (Civil Code § 1788.17-incorporing 15 U.S.C.A. § 1692(e)(10)) and the use of any unfair or unconscionable means to collect or attempt to collect any debt (Civil Code § 1788.17-incorporing 15 U.S.C.A. § 1692(f)).

188. ln illegally attempting to collect from Plaintiffs in the manner described and alleged herein, Defendants violated the Rosenthal Act by providing Plaintiffs with misleading and inconsistent statements regarding the amounts believed to be due and owing, which Plaintiffs allege were not owed to Defendants but Plaintiffs paid when Defendant Shellpoint applied her modified monthly payment to those fees.

189. The claimed amount owing in the Notice of Default contains charges for payments Plaintiffs have already paid, fraudulent charges, unnecessary fees added by Defendants.

190. As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Plaintiffs have suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

191. However, the Rosenthal Act is a strict liability statute such that Plaintiffs need not prove or plead actual reliance or

resulting damages. Defendants conduct violated the aforementioned provisions of the Rosenthal Act simply because Defendants' conduct would have deceived a hypothetical "least sophisticated debtor" and was objectively unfair and unconscionable. Plaintiffs is entitled to penalties and attorney's fees as a result. See Civil Code § 1788.30. Plaintiffs is also entitled to recover her actual damages, including emotional distress, suffered as a result of the violations, as set forth above.

# XVI.

# TENTH CAUSE OF ACTION DEMAND FOR ACCOUNTING (AS TO ALL DEFENDANTS)

192. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

193. The elements for a claim for accounting are: (i) a fiduciary relationship or other circumstances appropriate to the remedy, and (ii) a balance due from Defendants to Plaintiffs that can only be ascertained by an accounting.

194. Defendants have held themselves out to be Plaintiffs' creditors and mortgage servicers. As a result of this purported relationship with Plaintiffs, said Defendants have a duty to Plaintiffs to properly account for payments made by Plaintiffs. Moreover, a fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting.

195. The mortgage contract between Defendants and Plaintiffs allows Defendants to pay for default-related services when necessary

or appropriate, and to be reimbursed by the borrowers, but it does not authorize Defendants to mark-up the actual cost of those services to make a profit, nor does it allow Defendants to incur unnecessary fees.

196. Nevertheless, it is alleged, upon information and belief, that Defendants mark-up prices charged by vendors and then, without disclosing the mark-up, assess borrowers' accounts for the higher, marked-up fee, so Defendants can earn a profit.

197. Defendants are aware that it is improper to mark-up and/or assess unnecessary fees on borrowers' accounts for default-related services. Therefore, Defendants fraudulently conceal these fees on borrowers' accounts, omitting any information about Defendants' additional profits, by identifying them on mortgage statements only as "Other Charges," "Other Fees," "Miscellaneous Fees" or "Corporate Advances."

198. Plaintiffs have made mortgage payments to Defendants and their successors since 1987. Plaintiffs believe and are informed that the amount claimed due and owing at the time of the recording of the Notice of Default(Exhibit B), is not correct.

199. Plaintiffs have a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiffs' knowledge or consent, which are not allowed by law.

200. It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein. Therefore, these monies are due to be either credited back to

Plaintiffs in full, or credited to the rightful owner of Plaintiffs's
Note and Mortgage.

201. The actual amount of the arrearages on Plaintiffs' loan and
the actual amount of money due from Defendants to Plaintiffs, and vice
versa, is unknown to Plaintiffs and cannot be ascertained without an
accounting of the receipts and disbursements of the aforementioned
transactions.

# XVIII.
# PRAYER

**WHEREFORE**, Plaintiffs pray for judgment against each Defendant,
jointly and severally, as follows:

1. For damages sustained by Plaintiffs due to Defendants'
wrongful acts in excess of the jurisdictional limits in an amount to
be proven at trial;

2. For disgorgement of all monies acquired by Defendants by
means of any act or practice declared by this Court to be wrongful;

3. Pursuant to Bus. & Prof. Code § 17200, et seq., that all
Defendants, their employees, agents, representatives, successors,
assigns, and all persons who act in concert with them, be permanently
enjoined from making any false or misleading statements or falsely
reporting negative credit to reporting agencies, and from selling the
foreclosed property on an unlawfully procured debt;

4. Pursuant to Bus. & Prof. Code § 17200, et seq., that this
Court make such orders or judgments necessary to prevent the use or
employment by any Defendant of any act which violates §17200, et seq.;

COMPLAINT FOR DAMAGES                53

1   and to restore to any person in interest, any money or property, real

2   or personal, which may have been acquired by means of any such act;

3       5.    For disgorgement of all monies acquired by Defendants by

4   means of any act or practice declared by this Court to be wrongful;

5       6.    For interest on the sum at the rate of 10% per annum;

6       7.    For punitive damages against Defendants due to their

7   intentional, reckless or willful wrongful acts;

8       8.    For any and all relief granted under California Civil Code

9   § 2924. l 2(b );

10      9.    For reasonable attorney's fees and costs of suit, as allowed

11  by law, and all other relief granted under Civil Code §2924.l 2(i);

12      10.   For injunctive relief as set forth herein; and

13      11.   For such other and further relief as this Court deems just

14  and proper.

15

16  Dated: May 22, 2018                    NEHORAY & DRAKE, LLP

17

18

19

20                                         _____

21                                         MAC E. NEHORAY
                                           ATTORNEY FOR Plaintiffs

22

23

24

25

26

27

28  COMPLAINT FOR DAMAGES              54